Aloha, my name is Pamela Byrne. I represent the defendant from Honolulu, Hawaii, Mr. Paopao. You know, when I was reviewing the transcripts last night and all the briefs, it became evident to me that all the legal arguments are meaningless unless we have the facts somewhat straight. And the facts in this case are a little curious. So I thought what I would do... All the facts are not relevant if there's no standing to raise the suppression issue. So maybe we should go there first. Oh, my goodness, certainly. I don't understand the government's argument as to no standing to raise the suppression. In our moving papers, I may be speaking too loudly. In our moving papers, we raise the issue of protective sweep. And, you know, in criminal cases, we don't get discovery like we do in civil cases. So in my moving papers that were based, premised on the limited police reports I had, as the testimony from the two police officers transpired, I realized the facts were somewhat different than I had understood. And yet, nonetheless, in our argument, I indicated on page 129, talking about the excerpts of record, I indicated to the court that I think our arguments correctly address these points about what is involved in a protective sweep. Later, the government made his closing arguments based on the facts that the officers presented. The judge interrupted to say on page 134 of the excerpts of record, I don't think the defense is saying he couldn't go in to do a protective sweep. And then the government says, well, that's what they're saying in their papers on page 134. And then on page 137, I go on to make my argument as to protective sweeps. The purpose is to protect officers against surprise attack and so on. So I can't understand the argument whatsoever that there's no standing. It was raised throughout. Kagan. I'm talking about Fourth Amendment standing and the fact that this – I gather there's no dispute that Mr. Pow-Pow had no – didn't live in, own, have any connection to the place. Yes. He did not. And we are not arguing that he did. We're not arguing that he had any Fourth Amendment interest. I mean, there may be a way of a problem. We need to talk about that. He has a Fourth Amendment interest. And if they had picked up the object, the bag, and looked inside it, he would have a Fourth Amendment interest in that search. But they didn't do that. They just saw it walking into the space in which he had no – if there had been a search of that space, he would have had no Fourth Amendment interest to raise it. Is that right? He would have had no Fourth Amendment – yes, of the space, of the apartment. Of the apartment, correct. Yes. So the whole plain view doctrine is essentially that there was no search of the apartment, of his stuff. There was only a search of the apartment. They walk in. They see something. It doesn't matter whose it is. He has no interest in the space. No, Your Honor. With respect. What's wrong with that? What's wrong with that is that he has a Fourth Amendment interest in his own property, in his effects. The Fourth Amendment says so. In the bag. Correct. But they didn't touch his bag. They just looked in which he left open. Well, they testified that he wore the bag. They saw him with the bag on. They – well, not they. It's actually specifically Officer Lum. And Officer Lum saw him walk out of the apartment with his bag on. Then, according to Officer Lum, Mr. Paopao retreated and then, according to Officer Lum – When they saw this gun in the bag, what did they do next? Well, first they saw the bag. He saw the bag. And he claims it was zipped open approximately one inch and that – Not challenging that he saw it. Through that. Okay. He saw that. And then what he does next is not get a search warrant for the bag that belongs to Mr. Paopao. He seizes it. That's what he did next. He took the bag at that point? The officer, yes. He took it and left. He took the bag. Took the bag and left. Yes. And then what happened? Mr. Paopao's bag. He went to great lengths to testify it belonged to Mr. Paopao. Now, as to – And is there a case – I mean, because I had thought, and maybe this is just wrong, that if what they're seizing is in the space and the complaint is about the search of the space – I mean, that's really your complaint. Your complaint is they went someplace where they shouldn't have gone. I'm not saying they didn't see it in plain view. Our complaint is – sorry. Plain view – first of all, we're saying that any search of private property, your bag, mine, is either consent or – One of the exceptions. They didn't search the bag. They didn't search the bag. All right. But our argument is that plain view is only valid when they're – where they have a right to be. So the issue does necessarily become are they where they have a right to be. But what's difficult here, their right to be is not his problem because they – that's what's not his problem under the Fourth Amendment standing cases because whether or not he had a right to be in that apartment is something he doesn't have the ability to challenge. They could have been there all they wanted. If he has a right to challenge anything, it's that there was something wrong with their picking up his bag after he was – after they were there. Right. And you're not challenging that. And that's why I'm having a lot of problems with it. You're not saying that even if they had a right to be where they were, they had no business picking up his bag. I used a double negative, and I'm sorry. You're not saying that even if he had a right to be where they were, i.e., even if the protective sweep was correct, that they had no business picking up the bag. You're not saying, for example, it was not actually in plain view or anything like that. I'm not. All right. So, therefore, your complaint is not about picking up the bag. It's about being where they were. It is about – it's about both. It's about you can't – for example, supposing the police had an interest in my client's car and it was parked on a public street. That car is on a public street, but he has a privacy interest in his car just like my client has a privacy interest in his bag. But he doesn't have a privacy interest in telling the police that they can't look inside the car from where they're standing. And so do you have any case like this? Is there any case in which somebody has been found to have a – I mean, it's sort of a curiosity, and I certainly would have assumed that you couldn't do this, but I don't know if there's a case going either direction. Well, you know, the government never raised themselves this issue of that the – not in the context you're saying. The government has never – They're raising it now, though. They're raising it quite vigorously now. Well, no. Actually, what they're saying – I misunderstood. I thought they were saying that our permutations of the plain view argument were not raised – strike that. Our permutations of the protective sweep were not raised below. So that is what the government has said. Well, we never said this point of the protective sweep, and we never made that point. So we may have been speaking at cross purposes. I want you to go ahead with your – I'll give you some extra time in your argument. Go ahead. But the evidence is that the gun was in plain view, could be seen when one looked at the bag. Is that right? Oh, I'm sorry. The evidence is that the gun, which was in a bag, a fairly large bag, was leaned against a sofa or was by a sofa in a – mind you, in an extremely small space. This is a tiny little apartment. And as they were leaving from a protective sweep, or what they called a protective sweep, they saw this bag. They also saw it before they entered, and they also saw it when my client went in. But, yes, they're saying that that bag was open an inch. They could see the gun. That's what they say. Okay. Did you want – well, maybe we should – do you want me to make the arguments anyway? Why don't you go ahead and make the argument, and then we'll hear understanding. Well, you know, the argument really, as I started off to say, it does have a lot to do with the facts, as you have so correctly pointed out. And briefly what I wanted to point out are a couple of things. One is on page 12 of my opening brief. I have the government's picture. It's actually the government's exhibit of the apartment. And what I had wanted to emphasize on that is the location of varying things, including the bag, the fact that there's no back door. And I wanted to show you in the government supplemental, there is on page 56 a picture of the door in the apartment. And the reason these things are important, at least they were as to my initial arguments, are as follows. This is a case in which the – an undercover – strike that – an intelligence officer, not a detective, receives a 7.30 a.m. call from some tipster. The tipster, who he says is reliable, but we have no extrinsic information, tells him that the persons that the police are looking for in a game room robbery are in a game room. The persons are not named by the tipster, and there's no information that they're actually robbing the game room. The detective goes to Charlie's game room, which is the name of the place, or into the vicinity. He doesn't really know where it is, and he calls for backup. While he's walking around looking for the game room, lo and behold, Officer Lum, who's off-duty, shows up. And Officer Lum says, hey, I know where that game room is. Been there, done that. So he leads our first officer, our detective, to the scene, and now all the cops are there in their uniforms and their guns are drawn. And seven people walk out of this tiny game room, this apartment, which I'm showing you here. Who knows why? It turns out across, there's a camera in the... What I wanted to show you is that on the... on Figure 1, to the... As you're looking at Figure 1, to the right of the apartment is a carport, and there are cars in there, according to the testimony. And so these persons, kind of like clowns coming out of a small car, walk out of this apartment, and they sit down or stand up. The testimony is unclear. No one remembers. Then Mr. Paopao comes out, sees what he sees, and backs up. According to Officer Lum, he peeks in the door, he sees my fellow, puts his handbag down, and then my fellow comes back, and Officer Lum arrests him. And as the exhibit shows, he arrests him some several feet away. But what is your overall point? Is your point that because he was arresting him outside the apartment, there was no reason to arrest him inside the apartment? There's that, but there's also the fact that this gentleman testified that he kept his eye on the purse the whole time. That's not possible. I'm talking about the credibility of this officer. All right, but that's not for us. The district court made whatever findings it needed. Well, she said that she found them not very credible. Not very credible, but credible enough. For the purse was there, she said. But she did find, contrary to what the government says, she actually in her findings found some interesting disparities in testimony. Okay. Why don't you let's hear from the government. We'll give you an extra couple minutes on your part. Good morning. May it please the Court. Marshall Silverberg on behalf of the United States. The defense raises three arguments in their opening brief, three legal arguments. The first two are whether the protective sweep can occur when the arrest is immediately outside the residence as opposed to the arrest inside the residence, which was Maryland v. Boullier, the Supreme Court case. They never raised that below. That never came up in either in their motion to suppress or in their reply memo or in the Court's opinion because it was never raised below. And the second issue that they raised is whether the scope of the protective sweep exceeded the limits of Maryland v. Boullier. That was never raised below. So that's where our arguments are under United States v. Bynum. This was a conditional plea agreement. It said you can only raise on appeal, you can only appeal the district court's order denying the motion to suppress. And under Bynum, you can only raise the issues that you raised below that the court addressed because the district court never had an opportunity to address either one of those two issues. So that's where our. Didn't she raise. So she raised whether or not there was a reasonable expectation to believe that there was a danger such that protective sweep was necessary. That was the issue below. All right. But then you didn't raise the standing issue either, which you now are raising in your reply. Right, because there was no issue below whether they had a right to be in the premises in terms of whether protective sweep is limited solely to arrests that occurs inside the building or outside the building. You would concede he had, although I think ultimately it doesn't make a difference, a possessory interest for Fourth Amendment purposes in that bag. He certainly had an interest in the bag, but when he left the bag open, he lost the. Abandoned it there. Well, not so much abandonment. I mean, we thought about that argument, but we didn't argue abandonment. What we're arguing is that in the plain view, there are two prompts. One, do you have a right to be in the premises or the place where the viewing is done? And two, is the item that you see immediately incriminatory by itself? Right. But I'm still not understanding why the – what I'm understanding to be the standing argument wasn't relevant to the whole case, not as it was argued in the district court. I mean, if her argument was that the protective sweep exceeded its bounds, still if he had no interest in the place, then no privacy interest in that apartment, then so what? So you should – so you did not argue something that you are arguing now. Right. I could have argued it. You suggested that it was induced by her change in argument, and there doesn't be anything about the change in argument that matters in that regard. I mean, my understanding in the court below was there was no question. As the district court found, the district court specifically asked me, and it's in the transcript, they're not challenging the right to do a protective sweep, are they? And I said, no. Because it seems so obvious that an officer would, in these circumstances, have the right to go in. But what difference does that make with regard to Fourth Amendment standing? If she has no – if this person had no interest in that apartment, that would allow him to raise any privacy interest about the apartment. He couldn't raise either of these arguments. I'm conceding that I could have raised that below, but it wasn't an issue. It just didn't behoove you very well to blame it on the defendant's arguments because it had nothing to do with the defendant's arguments. Well, it does in terms of whether or not a protective sweep extends to a sweep and the rest is right outside the place or right inside the place. Because if a protective sweep under Hoyos, which is still good law in the Ninth Circuit, we believe, then there's no question they had a right to go in to the place and be within the premises. So it really was an issue below whether or not they had the right to go in and be in the premises. The only question was, below, was there reasonable suspicion to believe a sweep was necessary at all. But you're right. I concede we could have raised the standing issue below and we did not. Well, another argument, I guess, again, which wasn't made, was that having seen the gun, he's already arrested. Why don't they need a search warrant? Okay. Because – and I know this came up with the other argument. We did not charge him with anything other than the gun that was in the – I mean, there was jewels, there was a knife and so on. I would think that argument would be a valid and important argument if the issue was whether the knife and the jewels were admissible for some robbery charge or whatever. We didn't do that. We only had the – Well, except that you did at that point pick up the gun. So why doesn't he have a Fourth Amendment interest in that seizure? Okay. Whatever may be true of what they saw. We can see he's got a Fourth Amendment interest in everything else in the bag that he didn't see. I understand that. I'm asking a different question. Okay. I'm asking whether he has a Fourth Amendment interest in the taking of the bag and taking of the gun. We can see he does in the bag, but not in the gun. The gun was in plain view. It was immediately a criminal charge. In plain view, but as – and maybe this – and I agree with Judge Trager that this argument may have been made. They saw it, but does that absolve them from getting a warrant to seize it? No. Under U.S. v. Fay, it says – this Court said that if an object is left out in plain view, and that was in the person's apartment, the officer can seize it because they have no Fourth Amendment interest in an item left out in plain view where anyone can see it. Oh, that's interesting. Okay. I didn't – I mean, so we rely upon United States Fay in our brief and also in common sense. If you leave an item where anyone can see it, under Rakes v. Illinois and all the Supreme Court cases, Coolidge v. New Hampshire, you're losing your right to have a Fourth Amendment interest when you knowingly expose something to the public that way. And that's – that's what Coolidge stands for. That's what Rakes stands for. So do you think we need to have briefing in this case on the waiver question? I'm sorry, Your Honor. Do you think we need to have briefing in this case on the waiver question? We haven't had any – you did not argue this. Theoretically – I mean, it's unlikely, but theoretically, we could find out that Mr. Papow owned this apartment. We don't know. No, you never asked. We never asked Mr. Papow if he owned it. I mean, yes, because it wasn't the issue. You didn't say you have no Fourth Amendment interest in the apartment. Theoretically, he has some connection to that apartment that would give him a Fourth Amendment interest. Well, it's not just theoretically. I mean, that's not in dispute. The place was run by a guy named Charlie, Charlie's Game Room. That came out at trial. That was – I think she just – she and her argument conceded that there was a – although, you know, in other circumstances, if he had some interest, I guess he could have testified without prejudice. All right. Is there anything else? Okay. Thank you. Thank you. We'll give you two minutes, Mr. Papow. You know, in the brief time I had, I couldn't find the case I was looking for, although I have it. I recall a Ninth Circuit case, 2005, but I can't find the name, in which the facts are somewhat similar. The police found an – I think it was a bag up on a laundry shelf. And this is when – That was open. United States versus Spain. Yeah. But you know what? In that case, they went ahead and got a search warrant for that bag. And I – it really – That's the other thing you didn't argue, but maybe that's because this other issue was open. Well, because who knew? I wouldn't mind extending the time if you wanted additional briefing on that – that argument. But a protective sweep – you understand that the fellow, of course, was outside cuffed and done. That issue was done. And they were arresting him on an outstanding warrant for not paying his car registration. And the other gentleman, of course, was never found in there. The record never established there was any warrants out for him. The record never established that that other gentleman, Mr. Matumoa, and my client ever did rob those game rooms. The government conceded through their testimony there was no probable cause to arrest my client or Mr. Matumoa for the game room robberies. There was no probable cause to arrest either anyone in that game room at that time, according to the government's own concessions. So they much – pretty much entered into a situation. They didn't know for sure whether my client was there or not. I hate to say it, but if that's true, it takes care of the search requirement, because once they saw the gun, they did have probable cause, and then they had a right to arrest him, and this would be a search incidental to the arrest. Well, it can't – well – Or a seizure incident. What precisely – could you just tell me precisely what is your Fourth Amendment argument that's preserved here? The preserved argument. I mean, that you saved on your stipulated appeal. I mean, you – you know, you pledged with a preservation of rights. So what precisely is the violation you're asserting here? The violation that we asserted and have asserted throughout is that the defendant had an interest in his effects, that the effects were seized without warrant. A warrant was easily obtained. The government, in all instances, has the burden of proving when they seize property, they have to have a warrant or one of the exceptions. Their exception that they enumerated was that they entered this premises protective suite, we're saying that you can't enter a protective suite. You can't use that as a grounds to enter under our circumstances. Once you're legally in, you can. Secondly, we're saying that the scope – Was that argument made in the district court? Yes. Well, again, it was made verbally, yes, but we didn't know what the facts were because the testimony was – The argument that they didn't have the right to go in there as opposed to they didn't have a right once they got in there to do X. We had three. One, they didn't have a right to be in there. They have no right to enter just because they're doing a protective suite. Two, the scope of the suite was too large. You know, you obviously can't find a person hiding in a handbag. And as I wanted to point out, that apartment is tiny. The cops went in. They saw the bathroom was empty. They saw that little tiny game room with folding tables was empty. They walked past – there's only one furniture, which is a sofa. They walked past it. And then they came back again. And then he comes back to see if there's something behind the sofa. If you look at the diagram, there's no way a person can be behind that sofa. That was a ruse to go back. It's all – it was just really a ruse. Okay, I'm past my time. Thank you. And if you need extra time for briefing the real standing issue in quotes, then I would be glad to do that. Thank you very much. Thank you. Thank you, counsel. The case of the United States v. Capel is submitted, and we are in recess until tomorrow.
judges: B. Fletcher, Berzon, Trager